**John BLASKI, Plaintiff-Appellant,**

v.

**INLAND STEEL COMPANY, Inland Steel Products Company and Joseph T. Ryerson & Son, Inc., Defendants-Appellees.**

No. 12653.

United States Court of Appeals Seventh Circuit.

Nov. 16, 1959.

Joseph Keig, Sr., Chicago, Ill., for appellant.

H. Templeton Brown, Patrick W. O'Brien, Chicago, Ill., for defendants-

appellees, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

Plaintiff-appellant, John Blaski, hereinafter referred to as plaintiff, filed a complaint in the District Court charging defendants-appellees, Inland Steel Company, Inland Steel Products Company and Joseph T. Ryerson & Son, Inc.,[1] with violation of Section 7 of the Clayton Act (15 U.S.C.A. § 18). Treble damages under 15 U.S.C.A. § 15 and an order of divestiture under 15 U.S.C.A. § 26, were sought. The defendants took plaintiff's deposition and moved for summary judgment on the complaint and deposition. The District Court granted defendants' motion and dismissed the action, holding that the complaint and deposition failed to make any showing of damage to the plaintiff. Plaintiff appealed.

This appeal presents a single issue: Did the District Court err in ruling that the complaint and deposition failed to show any injury to plaintiff resulting from the acquisitions about which plaintiff complains?

The complaint alleges that plaintiff is engaged in fabricating and selling steel building products and as such is a purchaser of steel sheets, galvanized steel sheets and steel angles. It alleges that Inland is primarily an operating company which with its subsidiaries constitute an integrated unit of the iron and steel industry; that Inland and its subsidiaries Products and Ryerson manufacture, sell and distribute steel products. The complaint describes in detail the development and expansion of Inland since its incorporation in 1917 as successor to an 1893 establishment, including Inland's 1935 acquisition of Ryerson, a steel service organization; its 1939 acquisition of Products, a manufacturer and seller of sheet metal products consisting primarily of building materials, metal buildings

1. Referred to as Inland, Products and Ryerson, respectively.

and building products such as roofing, siding and steel roof deck; and the acquisition over the years of three manufacturers of steel products and varying degrees of control or interest in seventeen companies engaged in mining ore, seven companies which mine coal and produce coke, two which mine limestone and fluorspar, as well as a rolling mill. company, a rail rerolling mill and a steel post company. It is alleged that the effect of these acquisitions by Inland have been "substantially to lessen competition or to tend to create a monopoly" in the production, distribution and sale of steel products in the United States or in the Chicago area, in violation of the antitrust provisions of 15 U.S.C.A. § 18. Actual and potential elimination of competition is alleged and that plaintiff as a purchaser and user of steel products is damaged.

In his deposition the plaintiff testified that prior to World War II he purchased some steel from Ryerson and some angles from Inland but the bulk of his purchases was from other warehouses and mills. That for some years following World War II plaintiff's demand for steel was practically negligible. Only during the three years prior to his deposition have his operations required the use of steel in substantial quantities. This was for the purpose of making metal decking. Purchases of steel for this use were made from Sharon Steel Company, Rolled Steel Products Company, U. S. Steel Company and some from Ryerson. All orders placed with Ryerson were filled. Plaintiff's principal supplier during 1957 and 1958 was Sharon Steel Company; previously purchases were made wherever the "best proposition" could be obtained. The extent of plaintiff's contact with Inland was a general discussion aimed at the possibility of obtaining a "position on Inland's books" i. e., establish a supplier—customer relationship for the purchase of steel directly from the mill. The approach to Inland was made at a time when steel was in short supply. Inland advised that it was un-. able to take on new customers at that time. Its position in this respect was the same as that taken by other steel companies contacted at the same time by the plaintiff.

Plaintiff testified that in order to obtain steel sheets rolled to tolerances as close as desired by him he was compelled to purchase from Sharon Steel Company and pay higher prices. That purchases from warehousemen such as Ryerson could be made only at prices higher than the price of purchases direct from the steel mills such as Inland. Plaintiff's steel decking business terminated shortly after Acme Steel Company entered the field of fabricating steel metal decking in 1956 or 1957.

When asked to state what actual damage he had sustained plaintiff was unable to do so. He pointed out that Products being a subsidiary of Inland and a competitor of plaintiff in the manufacture of steel decking, was in a position to receive favorable treatment from Inland in obtaining steel to tolerances it desired or at better prices; that Inland was in a position to favor its subsidiaries Products and Ryerson; that Inland's control of sources of raw materials and of outlets for its steel lessened the opportunity of others to enter the field in competition with Inland as a steel supplier and narrowed the sources from which steel fabricators like plaintiff could obtain the steel required for their operations. Plaintiff, however, was unable to show in what particular way he had actually been damaged or injured.

In order for plaintiff to maintain an action under 15 U.S.C.A. § 15 it was necessary that he show injury to his business. In Beegle v. Thomson, 7 Cir., 138 F.2d 875, 881, certiorari denied Beegle v. Thompson, 322 U.S. 743, 64 S.Ct. 1143, 86 L.Ed. 1576, we stated:

"Section 15, allowing private parties treble damages for injury accruing to their business from violation of the Anti-Trust Act, embraces, as one of the essentials to such action, injury to plaintiff's business. The complaint must affirmatively show this injury. It is not enough to al-

lege something forbidden and claim damages resulting therefrom. Allegation of the specific injury suffered by plaintiff differing from that sustained by it as a member of the community is essential. The manner, nature, character and extent of the injury sustained and the facts from which injury accrues and upon which damages may be assessed as well as those with regard to the effect of the alleged violation upon plaintiff's business, must be pleaded. The mere existence of a violation is not sufficient *ipso facto* to support the action, for no party may properly seek to secure something from another without allegation and proof of facts demonstrating pecuniary loss springing from or consequent upon the unlawful act."

Plaintiff's complaint and deposition are insufficient to show an antitrust violation which has resulted in specific damages to the plaintiff's business or property.

The District Court's entry of summary judgment for the defendants-appellees was proper and is affirmed.

Affirmed.