RAYCO MANUFACTURING COMPANY,
a corporation, Plaintiff,

v.

John F. DUNN, Defendant and Counter-
Plaintiff,

v.

RAYCO MFG. CO., a corporation, Rayco
Seat Cover Sales Corporation, Rayco
Auto Seat Covers, Inc., Illinois Seat Cov-
ers, Inc., and the B. F. Goodrich Com-
pany, Counter-Defendants,

No. 61 C 249.

United States District Court
N. D. Illinois, E. D.

Jan. 21, 1964.

Samuel Weisbard, Myron M. Cherry, McDermott, Will & Emery, Chicago, Ill., for Rayco Mfg. Co., Rayco Seat Covers and Ill. Seat Covers.

John Paul Stevens, William G. Myers, Rothschild, Hart, Stevens & Barry, Chicago, Ill., for John F. Dunn.

Samuel W. Block, Kenneth J. Burns, Jr., Raymond, Mayer, Jenner & Block, Chicago, Ill., for B. F. Goodrich Co.

MAROVITZ, District Judge.

Motion by counterdefendants Rayco Manufacturing Company and B. F. Goodrich Company for summary judgment as to the counterclaim, under Rule 56 of the Federal Rules of Civil Procedure.

This suit is brought by Rayco Manufacturing Company, a manufacturer of automobile seat covers and accessories, against one of its dealers, with jurisdiction based upon diversity of citizenship and the trademark and unfair competition laws of the United States, Sections 1051–1127, Title 15 U.S.C. It is alleged that plaintiff, the owner of the trademark "Rayco", entered into a written franchise agreement with the defendant, granting defendant authority to use the trademark and trade name "Rayco". Plaintiff charges that the defendant, in violation of the provisions of that contract, has sold competing products under the "Rayco" trademark, without authority to do so. It is therefore alleged in counts I through IV that defendant has traded upon plaintiff's reputation and good will, and is guilty of common law unfair competition, infringement of a registered trademark, and federal unfair competition (Sec. 1125(a), Title 15 U.S.C.).

In counts IV and V, plaintiff seeks specific performance of the franchise agreement and supplemental lease which provide for termination of the contracts upon breach thereof. In count VI, plaintiff alleges that defendant has failed to pay for merchandise ordered from plaintiff, and seeks recovery of $5,940.46. Count VII charges further breach of contract by reason of defendant's failure to "devote his entire time and effort" to promote Rayco sales. In count VIII, plaintiff prays for relief, asking that, (a) defendant be enjoined from further using the "Rayco" trademark, or trade name on goods other than those supplied by plaintiff; (b) defendant be ordered to specifically perform the supplemental reassignment contract; (c) the franchise agreement in question be cancelled; (d) defendant be ordered to pay the sums allegedly due plaintiff for merchandise; (e) the sum of $250,000 be awarded as treble the damages suffered by plaintiff as a result of defendant's alleged trademark infringement and unfair competition; (f) defendant be required to account for and pay over all profits derived from the aforementioned acts, and (g) defendants be ordered to pay over all costs, including attorney's fees and expenses.

Defendant denies all material allegations and has filed a counterclaim in six counts alleging violations of the antitrust laws, breach of contract, and libel, naming plaintiff and the B. F. Goodrich Company as counterdefendants. It is with a motion for summary judgment on this counterclaim that this court is now concerned.

In count I, counterclaimant charges that counterdefendants have been engaged in an unlawful combination to restrain competition, in violation of Section 3 of the Clayton Act, (Sec. 14, Title 15 U.S.C.) and Section 1 of the Sherman Act (Sec. 1, Title 15 U.S.C.). More specifically, it is alleged that counterdefendants have refused to sell their products except on condition that the purchaser thereof operate his retail business upon premises owned or leased by Rayco. It is further alleged that Rayco has refused to lease any interest except upon the condition that the lessee enter into a franchise agreement with Rayco, execute a reassignment agreement effective upon breach, and agree not to sell or deal in the products of a Rayco competitor.

It is then alleged that Rayco, in violation of Sections 2(a), 2(d), and 2(e) of the Clayton Act, as amended by the Robinson-Patman Act (Sections 13(a), (d), and (e), Title 15 U.S.C.), has granted certain dealers secret rebates, payments, allowances, services, and facilities not made available to defendant. Counter-

claimant further charges that counter-defendant Goodrich by acquiring all the stock of Rayco will or may substantially lessen competition, and tend to create a monopoly in violation of Section 7 of the Clayton Act (Sec. 18, Title 15 U.S.C.). By reason of the aforementioned acts, counterclaimant alleges that he has been prevented from purchasing merchandise from competing suppliers and thereby has been deprived of substantial profits; he has been deprived of profits which would have been earned during the unexpired portion of his franchise agreement; he has suffered injury to his reputation and good will by counterdefendants' decision to use his case as an example to coerce other distributors. Counterclaimant prays for $780,000 in treble damages under Section 4 of the Clayton Act, (Sec. 15, Title 15 U.S.C.) plus attorney's fees and costs.

In count II, counterclaimant alleges that Rayco breached the terms of the existing contract between them by refusing to sell and deliver any further merchandise and by terminating said contract without legal cause. This, it is charged, was done to punish him for failing to purchase exclusively from Rayco, and to serve as an example to other dealers. Counterclaimant prays for relief in the form of $180,000 in actual damages, and $100,000 in punitive damages. Counterclaimant also requests the court to declare his right to continue the use of the trademark "Rayco", and "Rayco Berwyn" at his place of business.

Count III charges that counterdefendant published throughout the United States a defamatory libel, in the form of a letter addressed to other dealers, announcing the termination of Dunn's franchise and the suit instituted against him. Counterclaimant prays for a $25,000 judgment in actual damages and $25,000 in punitive damages. Count IV, a class action for an accounting of funds collected by Rayco from dealers for advertising purposes, was dismissed on Dunn's motion and need not concern the court.

Count V is also in the form of a class action, brought by counterclaimant Dunn on behalf of all dealers. Counterclaimant charges that Rayco failed to honor its contractual warranties which offered full credit on returns of imperfect plastic seat covers, thereby causing damage to counterclaimant in excess of $10,000. Finally, counterclaimant alleges, in count VI, that Rayco has granted certain advertising and promotional services or allowances to other dealers without making them available to him on proportionately equal terms. For these alleged violations of Sections 2(d) and 2(e) of the Clayton Act, as amended by the Robinson-Patman Act, counterclaimant asks for recovery of the amount of his undetermined damages.

This is a motion by counterdefendants for summary judgment as to the counterclaim, under Rule 56 of the Federal Rules of Civil Procedure. Each of the counts before the court (count IV has been dismissed) will be considered separately. In approaching a summary judgment question involving 600 pages of memoranda, exhibits, and affidavits, dealing with anti-trust litigation, it would be prudent to take note of a recent Supreme Court pronouncement:

"It may be that upon all of the evidence a jury would be with the respondents. But we cannot say on this record that 'it is quite clear what the truth is.' Certainly there is no conclusive evidence supporting the respondents' theory. We look at the record on summary judgment in the light most favorable to Poller, the party opposing the motion, and conclude here that it should not have been granted. We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. (citing cases) It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no

substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" Poller v. Columbia Broadcasting System, 368 U.S. 464, at page 473, 82 S.Ct. 486, at page 491, 7 L.Ed.2d 453 (1962).

■ The 1963 amendment to Rule 56 clearly provides that the party adverse to the motion may not rest upon his pleadings once affidavits have been introduced into a summary judgment proceeding. This court, sitting in the Seventh Circuit, need not determine whether the amendment applies to the motion at bar. The Court of Appeals has spoken in 1954 with much the same intent embodied in the amendment. In Repsold v. N. Y. Life Ins. Co. (7th Cir., 1954) 216 F.2d 479 at page 483, the court said that the district court "has the power to penetrate the allegations of fact in the pleadings and look to any evidential source to determine whether there is an issue of fact to be tried."

■■ Count I: Under Section 7 of the Clayton Act, a civil suit may lie upon a showing that (1) the acquisition did or reasonably might substantially lessen competition or create a monopoly, and (2) the complainant suffered some special damage to his business as a direct and proximate result of the acquisition. Blaski v. Inland Steel Co. (7th Cir., 1959), 271 F.2d 853, 855; Bender v. Hearst Corp., (2nd Cir., 1959), 263 F.2d 360, 370. It is not enough that counterclaimant has suffered injury as a result of extraneous actions, such as Rayco's termination of the franchise on account of competitive purchasing. Rather, the injury must result from the lessened competition or monopoly itself. Peterson v. Borden Co., (7th Cir., 1931), 50 F.2d 644, 646; Conference of Studio Unions v. Loew's Inc. (9th Cir., 1951), 193 F.2d 51, certiorari denied 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952).

■ Counterclaimant Dunn at no point in the voluminous pleadings is able to offer evidence showing this required proximate injury. A competitor of an acquiring or acquired corporation might have standing to bring such an action, but Dunn has neither been foreclosed from selling to Rayco, nor as a customer, been foreclosed from receiving an adequate supply of merchandise. On this ground alone the Section 7 action should be dismissed. Counterdefendant's alternative argument that the acquisition of a mere 150 outlets could not constitute an illegal act, cannot be accepted. Without determination of the product market, the geographical areas involved, along with close scrutiny of the intents and purposes evidenced, no decision should be reached. These are material factual questions that cannot be determined in a summary proceeding. Lack of standing, however, is fatal to counterclaimant.

■ The Robinson-Patman Act provides sanctions against discrimination in prices or services among customers. The charge made as to violation of this Act in count I is similar to the entirety of count VI and will be considered in conjunction with it. It is counterdefendant's position that the Robinson-Patman Act applies only to discrimination among competing customers. By analogy, Rayco cites State Wholesale Grocers v. Great Atlantic and Pacific Tea Co., (N.D.Ill., 1957), 154 F.Supp. 471, rev. on other grounds, 258 F.2d 831 (7th Cir., 1958), in which Sections 2(d) and 2(e) were said to be companion sections and therefore eligible to be treated alike as to the scope of commerce affected, despite differences in terminology. This is quite different from requiring a similar reading of the two sections when one (d) speaks of "customers competing" and the other (e) of "all purchasers". Assuming arguendo, however, that the discrimination must be limited to the Chicago or "competing" area under both sections, this is not a proper subject for summary judgment. There are factual issues before this court as to whether favoritism was shown. The affidavit of a Rayco employee denying such discrimination cannot sustain such a ruling, when this same affiant repeatedly refused to answer discovery questions posed by counterclaimant. In addition, the factual question of which dealers "compete" with counter-

claimant must be determined. Summary judgment should be denied as to this portion of count I, and as to all of count VI.

■ The court must turn next to the alleged violations of Section 1 of the Sherman Act, dealing with the unlawful combination to restrain competition. Counterdefendants allege in their motion for summary judgment that no conspiracy could exist, since there was only one party involved. It is counterclaimant's contention that Rayco can be separated into the Rayco Manufacturing Company, Rayco Seat Cover Sales Corp., Rayco Auto Seat Covers, Inc., Illinois Seat Covers, Inc., and Joseph Weiss, owner and chief executive of the pyramid. Cross-complainants agree that Weiss, as president, could not conspire with his own corporation to violate the statute, under the theory that an agent cannot conspire with his principal. Nelson Radio and Supply Co. v. Motorola, (5th Cir., 1952) 200 F.2d 911, at pages 914 and 915. However, it is contended that a conspiracy could exist under law between the corporations and Weiss, in his capacity as a shareholder. In the Nelson case, supra, it was held that the president, *and sole shareholder* of a corporation cannot while acting on its behalf be said to have conspired with it. The conspiracy complained of here is not the type at which the statute is directed. There is no joinder of parties to control the market or institute unlawful acts, which could not have been done by a single corporation acting alone. From the evidence before the court, it would appear that the subsidiary corporations and Weiss were one and the same person. There is no evidence presented by Dunn to the contrary, nor is there any hint that such evidence is forthcoming at trial. A mere pleading allegation is not sufficient to counter a summary judgment motion supported by affidavits.

While it is conceded that common ownership and control may not necessarily immunize corporations from the sting of the anti-trust laws, it does not follow that the act of one of the affiliated companies automatically becomes the collusive action of all of its affiliates. Counterclaimant's cases can all be distinguished on this ground. In United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1946), and Kiefer-Stewart Co. v. Joseph E. Seagram and Sons Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1950), the Supreme Court applied anti-trust sanctions to affiliated companies, but only upon evidence that the affiliation was a means of implementing the violation. That is, the various rungs of the ladder must work together to support an anti-trust charge. The mere existence of the rungs of the corporate ladder will not suffice.

■ Countercomplainant's theory that the acquisition of Rayco stock made Goodrich a conspirator in previous acts of Rayco is also without merit. To quote from counterdefendants' brief at p. 87,

"It is one thing to say that an acquiring corporation may be responsible for the debts and liabilities of an acquired company; but that is a far cry from the startling thesis that, by virtue of the acquisition, the acquiring company, *nunc pro tunc,* committed the *acts* underlying said debts and liabilities of the acquired firm."

As a matter of law, summary judgment should be granted and is granted as to the alleged violations of Section 1 of the Sherman Act.

■ Finally, under count I, the court must consider Section 3 of the Clayton Act and the alleged violations thereunder. Section 3 provides sanctions against exclusive dealing contracts which are in restraint of competition. Counterdefendants contend that summary judgment should be entered on this point because Dunn, as a dealer, has no standing to sue, and, secondly, because the exclusive dealing agreements complained of, did not violate Section 3, not meeting the requirements under the statute, of competitive injury. The treble damage penalties of the Clayton Act are strong medicine. They are intended primarily for the use of an aggrieved competitor,

whose business has been injured by an exclusive dealing contract limiting his outlets. The court, in Davidson v. Kansas City Star Co., (D.C.Mo., 1962) 202 F. Supp, 613 at page 619, refused to allow a Section 3 action where the plaintiffs were parties to the contract in question. The theory behind such a decision seems sound. A dealer who voluntarily enters into an agreement with his supplier in consideration of other benefits conferred upon him, lacks the same equitable basis to complain of the exclusive dealing provision as a foreclosed competitor of the seller. The logic in this reasoning is inescapable. If dealers were permitted to bring treble damage suits at will, there would be a rash of responses to exclusive dealership offerings, followed by the unwarranted high profit of a Clayton Act suit.

Counterplaintiff points out correctly that the Davidson case is founded upon the theory of *in pari delicto*, and argues that this defense should not apply to the case at bar. Dunn contends in the alternative that he was coerced into this exclusive dealing agreement and that he has standing to sue, since he has ceased to participate in the agreement. The coercion argument must fail. There is no evidence that counterclaimant was forced to accept this contract. He entered into it voluntarily to gain the benefits inherent in a Rayco franchise, and was free to refuse the offer. The second argument is equally fallacious. Once counterclaimant ceased to abide by the exclusive dealing contract he could no longer be damaged by its provisions. Counterclaimant cites a list of cases to reinforce his position that parties *in pari delicto* may bring anti-trust actions against each other. The cases are all distinguishable. Kiefer-Stewart Co. v. Joseph E. Seagram and Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); Moore v. Mead Service Co. (10th Cir., 1951), 190 F.2d 540; Interborough News Co. v. Curtis Publishing Co. (D.C.N.Y., 1952), 108 F.Supp. 768; and Trebuhs Realty Co. v. News Syndicate Co. (D.C. N.Y. 1952), 107 F.Supp. 595, all deal with the general proposition that the alleged illegal conduct of one party cannot immunize the other party against liability to those they injured. However, these holdings, disallowing the in pari delicto defense, have been limited to specific situations. Indeed, it was another of counterclaimant's own cases, Pennsylvania Water and Power Co. v. Consolidated Gas (4th Cir., 1953), 209 F.2d 131, that announced the limitation. That case held that where plaintiff has violated the antitrust acts *in combination* with the defendant, plaintiff's suit is barred by the "in pari delicto" defense. That is the situation before this court, and counterclaimant is therefore barred from maintaining this claim. In Simpson v. Union Oil Co. of Calif. (9th Cir., 1963), 311 F. 2d 764, the court said,

"The law does not permit an individual to see and observe a tort violation and then to voluntarily put himself in a position where a tort cause of action would accrue and because of which he might become a litigant."

Ring v. Spina (2nd Cir., 1945), 148 F.2d 647, may be distinguished on the issue of coercion, previously discussed. Accordingly, this court need not determine the effect of the contract on competition, and summary judgment is hereby entered on the Section 3 claim.

Count II: Under Paragraph 7 of the Franchise Agreement, Rayco was empowered to terminate the agreement upon a violation of any of the undertakings and covenants set out. Counterdefendant alleges six violations by Dunn, and each must be considered separately.

1) Failure to devote full time to his Berwyn store: There can be little doubt that the counterclaimant Dunn breached the provisions of Section 7 of the contract, as originally written, when he opened and operated the Dunn-Rite store in Westmont. Section 7 requires the dealer to "refrain from devoting either his time or effort * * * in the conduct or operation of any business other than the * * * store herein franchised. * * *" However, after the is-

suance of a Federal Trade Commission consent order on July 9, 1960, Weiss wrote to all Rayco dealers releasing them from the provisions prohibited by the order. It is a point in issue between the parties as to what provisions were no longer in effect. This would seem best resolved at a full dress trial and should not be determined in summary proceedings.

2) & 3) Failure to pay bills and make timely remittances: Under Paragraph 5 of the Franchise Agreement, the dealer is required to pay all invoices for merchandise ordered by him. This court may accept all of the counterclaimant's contentions, and still enter summary judgment against him on this count. After making a polygot of excuses (advertising costs must be separated, a check was written but not mailed, no record of one bill, a credit used twice, a credit not listed) Dunn has pared down his obligation to $1,407.63. Counterclaimant can offer no excuse for not paying this debt, except a vague belief, unsubstantiated that Rayco owed him money. It is well settled contract law that a debtor violates his legal duty when he fails to pay a debt he owes, even if his creditor is indebted to him, especially if the creditor's debt is unliquidated. There would, at first glance, thus appear to be a breach by Dunn of contractual obligations which would permit termination by Rayco. It is counterclaimant's position, however, that by permitting him to continue purchasing after prior payment failures, Rayco has waived this alleged breach. This argument cannot be accepted. Rayco's actions at the time of prior failures, shown by affidavit, were not such as to constitute a waiver. Rayco was diligent in its efforts to effect payment, and by its action of March, 1960, in stopping shipments until payment, Rayco overruled any possible waiver of the contract terms. Indeed, the contract contains the following provision:

"Failure by the Supplier to declare a breach for violation hereunder shall not constitute a waiver of the supplier's right to terminate this agreement for such violation."

It appears that counterclaimant breached the terms of the contract, entitling Rayco to terminate same. Summary judgment on count II should be entered. Although further discussion is not necessary, a brief résumé of the remaining alleged breaches follows.

4) Breach of misrepresentation provision: There exists a substantial issue of fact as to whether counterclaimant palmed off non-Rayco merchandise as that of Rayco. There are conflicting affidavits on this material issue, curtailing a summary judgment order based upon this alleged breach.

5) Failure to adequately represent Rayco: There exists a substantial question of fact to be decided here, as well. It would not be prudent for this court to determine whether Dunn complied with the alleged "implied" provision requiring him to buy "at least a reasonable and representative line of the manufacturer's product, so as to fairly represent him in his market." in the face of disputed affidavits. This is not a proper subject for summary judgment at this time.

6) Failure to submit financial statements: Paragraph 7 of the explanatory provisions of the franchise agreement, required the dealer to provide Rayco with a weekly report of gross sales, and upon request, a monthly balance sheet and profit and loss statement. Counterdefendants allege that the figures given them by Dunn differed from those reported on his income tax return. This, they contend, constituted a breach entitling them to termination of the franchise agreement. Dunn provides no answer to this charge, except negligence on his part. However, the mere fact of discrepancy between statements prepared for Rayco and for the Internal Revenue Department does not prove the inaccuracy of the former. Also, it would appear that some greater intent would need to be shown to merit a summary judgment order.

Count III: Both parties admit that Rayco distributed the letter, dated Feb. 15, 1961, to all Rayco dealers, informing them of the termination of Dunn's contract, and of the institution of this suit. It is counterdefendant's position that this letter was invited by Dunn, and that Rayco was privileged to publish it. They, therefore, ask for summary judgment on the issue of libel. The cases support counterdefendant's position that statements may be made to "protect a legitimate and important interest of the publisher, Cartwright v. Herald Pub. Co. (S.C., 1951), 220 S.C. 492, 68 S.E.2d 415 at page 417; to protect or advance the common interest, when communication is between those having such a common interest, Johns v. Associated Aviation Underwriters (5th Cir., 1953), 203 F.2d 208; Judge v. Rockford Memorial Hosp., 17 Ill.App.2d 365, 150 N.E.2d 202 (1958); where plaintiff has instigated the publication, Wuttke v. Ladanyi, 226 Ill.App. 402 (1922).

However, as counterclaimant asserts, all these privileges must be exercised in a "reasonable manner and for a reasonable purpose." Prosser, Law of Torts, 2d Edit., page 625. Dunn alleges that these letters were issued with malice, and are therefore removed from the privileges. This is a material issue of fact, which should not be given summary treatment. The interest claimed to be protected, namely, to remove any misinformation, similar to that present in the Houston "termination", is also disputed. Counterdefendants respond with the argument that "malice" will not be presumed, but rather must be proved, citing the Judge case, supra. This, undoubtedly, is true, but the place for proof of this kind is at the trial, not in this motion. The motion should be denied and is denied as to count III.

Count V: Counterdefendants allege that this count must be dismissed because it is a permissive counterclaim and does not involve the jurisdictional amount of $10,000. There appears to be no claim by Rayco on the question of liability. This is a "spurious" class action, as there is no common fund or res being attacked, and the claims of each member of the class are distinct. Pennsylvania Co. for Insurances, etc. v. Deckert (3rd Cir., 1941), 123 F.2d 979. Therefore, the claims of the members of the class may not be aggregated to reach the requisite jurisdictional amount, a practice permitted in "true" class actions. Matlow v. War Damage Co. (7th Cir., 1947), 164 F.2d 281 at page 284. Dunn's claim is a permissive counterclaim, not arising out of the transaction that is the subject matter of the opposing party's claim. As a permissive claim need not be pleaded at this time, but may be the subject of a later suit, independent grounds of federal jurisdiction must be found to support it. Inter-State Natl. Bank of Kansas City v. Luther (10th Cir., 1955), 221 F.2d 382. Counterclaimant concedes this, as he must, but argues that his claim constitutes a set-off which he would be entitled to plead as a counterclaim, regardless of the amount in question. Dunn also contends that a defendant may aggregate the amounts involved in the compulsory and permissive counterclaims to reach the required jurisdictional amount. It need not be necessary to determine this issue at this time. Plaintiff has offered in its brief to study a documented claim by Dunn, and to acknowledge and pay it, if valid. The court therefore orders such a submission by Dunn, and will take this count under advisement, pending the outcome of this settlement offer.

Count VI: This matter was discussed in conjunction with the alleged Robinson-Patman Act violations in count I. Summary judgment should be and is denied.

To recapitulate, a summary judgment order should be entered in regard to:

1) Count I, as to Section 7 of the Clayton Act, Section 1 of the Sherman Act, and Section 3 of the Clayton Act.

2) Count III, in its entirety.

3) Count VI, in its entirety.

The parties will draft an order accordingly and present it to the court within the next ten days.