**CREST AUTO SUPPLIES, INC., a corporation, Protecto of Michigan, Inc., a corporation, and Morris Einhorn, Plaintiffs,**

v.

**ERO MANUFACTURING CO., a corporation, Defendant and Counter-Plaintiff,**

Crest Auto Supplies, Inc., a corporation, Protecto of Michigan, Inc., a corporation, Morris Einhorn, Albert Garfield, Orville B. Lefko, George Haar and Ben Krugel, Counter-Defendants.

No. 62 C 2082.

United States District Court
N. D. Illinois, E. D.

June 25, 1965.

---

Collen, Kessler & Kadison, and Mark A. Greenhouse, Chicago, Ill., for plaintiffs.

Earl E. Pollock, Sonnenschein, Levinson, Carlin Nath & Rosenthal, Chicago, Ill., for defendant.

MAROVITZ, District Judge.

Motion of defendants for summary judgment and/or to dismiss.

Motion of defendants for summary judgment on its counterclaims.

This is a six count civil anti-trust action brought by three "exclusive franchisees" against their supplier, a manufacturer of automobile seat covers and related accessories. It is alleged that beginning in 1958, and ending in 1961, the defendant entered into a series of franchise agreements with dealers around the country, including the instant plaintiffs, under the terms of which, said franchisees were licensed to use the trade name "Protecto," and were granted exclusive dealerships in specified territories. In consideration of such grants, it is alleged, the dealers agreed not to sell, use, install, etc. any other product of any other firm without the written consent of the defendant. In Count I, plaintiff Crest charges defendant Ero with (1) violating Sec. 3 of the Clayton Anti-Trust Act by requiring it to buy exclusively from Ero; (2) violating Sec. 1 of the Sherman Anti-Trust Act by allegedly requiring Crest to maintain resale prices; and (3) violating Sec. 2 of the Clayton Act, as amended by the Robinson-Patman Act, by allegedly discriminating against Crest both as to prices and services. In Counts II and III, plaintiffs Protecto of Michigan and Einhorn adopt and repeat the same allegations.

In Count IV, plaintiff Crest alleges that pursuant to the franchise contract, it paid to Ero, for advertising, an amount equal to 20 per cent of its purchases, and that Ero did not use said money for the purpose intended. In Counts V and VI, the other plaintiffs again repeat and adopt the same allegations.

Defendant has filed a series of seven counterclaims, based on amounts allegedly due Protecto Products Co., a wholly-owned subsidiary of defendant (counter-plaintiff), under various subleases, franchise contracts, and guarantees executed by the plaintiffs and additional parties defendant to the counterclaims. In Count I, Ero alleges that plaintiff Crest owes Protecto $5,757.98 for unpaid rent and other expenses under a sublease of premises located at 6300 North Lincoln Avenue in Chicago. Judgment is sought against Crest, and one Albert Garfield as guarantor. In Counts II and III, defendant alleges that plaintiff Protecto of Michigan, Inc. owes $27,045.10, and $25,500.00 respectively for unpaid rent and other miscellaneous expenses under subleases of premises located at 1755 Dix Avenue, Lincoln Park, Michigan, and 14185 Greenfield Road, Detroit, Michigan. In addition to the named plaintiff-counter-defendant, judgment is sought against Orville Lefko, George Haar, and Ben Krugel as guarantors.

Count IV is brought against the same counter-defendants mentioned in II and III, for $42,403.76, allegedly due for goods sold and delivered and advertising charges. Counts V, VI, and VII are brought against plaintiff Einhorn for rent due under subleases of premises located at 3101 Reading Road and 1684 Central Parkway, Cincinnati, Ohio, and for money allegedly owing for goods sold and delivered, and for advertising charges. Judgment is sought for $7,413.50, $30,300, and $15,255.09 respectively.

Defendant Ero has filed a series of motions for summary judgment and/or to dismiss the complaint, and for summary judgment on the counterclaims. Each shall be considered separately.

1) In Counts I, II and III of the complaint the plaintiffs herein allege that they suffered losses in their stores as a result of various provisions of the fran-

chise contract, which prohibited them from purchasing merchandise from anyone other than defendant. We do not reach the questions raised by defendant as to lessening of competition. Indeed, these are factual matters better reserved for trial, if such trial is necessary. Rather, we may dispose of these claims in accordance with our earlier decision in Rayco Mfg. Co. v. Dunn, (D.C.Ill., 1964) 234 F.Supp. 593, a case remarkably similar on its facts to the instant litigation.

■■ In that case, we held, as we do here today, that a litigant cannot be heard to complain of injuries which resulted from alleged antitrust violations to which it was a *voluntary* party. As we stated in Rayco, supra, when considering this *in pari delicto* defense:

"The treble damage penalties of the Clayton Act are strong medicine. They are intended primarily for the use of an aggrieved competitor, whose business has been injured by an exclusive dealing contract limiting his outlets. * * * A dealer who voluntarily enters into an agreement with his supplier in consideration of other benefits conferred upon him, lacks the same equitable basis to complain of the exclusive dealing provision as a foreclosed competitor of the seller. The logic in this reasoning is inescapable. If dealers were permitted to bring treble damage suits at will, there would be a rash of responses to exclusive dealership offering, followed by the unwarranted high profit of a Clayton Act suit." (at p. 599.)

See Pa. Water & Power Co. v. Consolidated Gas Electric Light & Power Co., (4th Cir., 1953) 209 F.2d 131, cert. den. 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104 (1954); Northwestern Oil Co. v. Socony-Vacuum Oil Co., (7th Cir., 1943) 138 F.2d 967, 971, cert. den. 321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081 (1944); Kershaw v. Kershaw Mfg. Co., (D.C. Ala., 1962) 209 F.Supp. 447, 454.

The cases cited by plaintiff, Kiefer-Stewart Co. v. Joseph Seagram and Sons, Inc., 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); Trebuhs Realty Co. v. News Syndicate, (D.C.N.Y., 1952) 107 F.Supp. 595; Moore v. Mead Service Co. (10th Cir., 1951) 190 F.2d 540, and others, were all considered by this Court in the Rayco decision, and distinguished. Each of these cases deal with the general proposition that the alleged illegal conduct of one party cannot immunize the other party against liability to those they injured. However, these holdings, disallowing the *in pari delicto* defense were limited to specific situations where the plaintiff had not violated the antitrust acts *in combination with the defendant*. This is the crucial distinction applied in Rayco, and reapplied today.

While Davidson v. K. C. Star Co. (D.C. Mo., 1962) 202 F.Supp. 613, 619, on which we relied in Rayco, has been subsequently reversed by the Eighth Circuit Court of Appeals, (Bales v. K. C. Star Co. (8th Cir., 1964) 336 F.2d 439), it must be noted that said reversal was based on the fact that the plaintiff was *coerced* into entering into the antitrust violations. That "coercion" argument was considered by this Court in Rayco, with regard to our discussion of Ring v. Spina, (2d Cir., 1945) 148 F.2d 647, and rejected on the facts before us. Indeed, we might note the clear distinction made by the 8th Circuit in Bales on this issue:

"Of course, if the plaintiffs actually were in pari delicto with the defendants in the alleged endeavor of the Star to prevent competition and create a monopoly for itself in the area, the law should leave them where it finds them."

It is clear then from the papers before us, as in Rayco, that there was no coercion involved here, and that plaintiffs sought to create a monopoly for themselves and defendant within specified territorial limits. Indeed, the depositions reveal that two plaintiffs here asked for and received franchises for additional locations after first entering into the contract with defendant, and that at no time did the plaintiffs request an opportuunity to deal in products of

other manufacturers, a right provided for in Paragraph 6 of the agreement. In addition, there are no allegations of coercion contained in the complaint of supporting affidavits.

As for plaintiffs' further argument that the Court's refusal to permit suits by "exclusive franchisees" will negate the provisions of Sec. 3 of the Clayton Act, we need only point to the many cases cited by plaintiffs themselves permitting suits by dealers who were "coerced," by parties who had not combined with defendants in violation of antitrust acts, and by competitors whose retail outlets had been reduced.

For these reasons, we must conclude that plaintiffs here are barred from maintaining an action for violation of Section 3 of the Clayton Act.

■ Similarly, accepting for the purposes of this motion the contention that defendant violated Sec. 1 of the Sherman Act by requiring plaintiffs to maintain resale prices, plaintiffs cannot recover when they acquiesced to the terms of this alleged arrangement. That is, we must apply the *in pari delicto* defense with equal force in this area as it was in Pa. Water & Power Co. v. Consolidated Gas Electric Light & Power Co., supra.

> "We are in accord * * * that Penns Water is precluded from recovery in this case because it was a party to the illegal agreement upon which it now bases its claim to recover under the anti-trust acts."

See also Northwestern Oil Co. v. Socony-Vacuum Oil Co., supra, where the Seventh Circuit Court of Appeals stated:

> "Having participated in this illegal undertaking, plaintiff may not recover; where parties are *in pari delicto*, the law leaves them where it finds them."

Accordingly, the plaintiffs may not pursue further these alleged violations of Section 1 of the Sherman Act.

■ The third antitrust charge, the alleged violation of Secs. 2(a) and 2(e) of the Clayton Act, as amended by the Robinson-Patman Act, must also fall.

Plaintiffs complain merely that defendant Ero "granted discriminations in prices and services to certain of their customers without offering or otherwise making available those same prices and services to others of their customers including the plaintiffs herein." There are no allegations that such discrimination substantially lessened competition or tended to create a monopoly in any line of commerce. It is clear that without such a competitive effect, price discrimination is entirely lawful, and that service discrimination is lawful in the absence of competition. Borden Co. v. F. T. C., (7th Cir., 1964) 339 F.2d 953, 956; American Oil Co. v. F. T. C., (7th Cir., 1963) 325 F.2d 101, 256; Eliz. Arden Sales Corp. v. Gus Blass Co., (8th Cir., 1945) 150 F.2d 988, 994.

Thus, taking the allegations of Counts I, II, and III of the complaint as true for the purposes of this motion, plaintiff has failed to adequately state a cause of action upon which relief can be granted. Defendant is entitled to judgment as a matter of law.

■■ Counts IV, V, and VI, brought by the three plaintiffs respectively, charge that defendant collected money for advertising purposes, and failed to expend same according to the provisions of the contract. We are inclined initially to dispose of these counts on jurisdictional grounds. It is clear from a reading of the complaint that these counts set forth a breach of contract action, governed by State law. (See Garfield Dep. pp. 146, 147, 149; Lefko Dep. pp. 176, 177; Einhorn Dep. p. 155). Such an action must be based on some independent jurisdictional ground, e. g. diversity of citizenship, not present here. While in isolated circumstances the Court may invoke the doctrine of pendent jurisdiction, Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L. Ed. 1148 (1933), to retain jurisdiction over a non-federal claim, the pleadings here do not justify such action. That is, in Hurn v. Oursler, supra, the Supreme Court stated that a federal court may retain jurisdiction over both federal and non-federal claims, when the *same* cause

of action is alleged in two counts, one count setting forth federal grounds for recovery, the other setting forth non-federal grounds.

"The *distinction to be observed is* between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character." Hurn v. Oursler, supra, at p. 246, 53 S.Ct. at p. 589.

The antitrust violations alleged in Counts I–III are entirely independent of the breach of contract charges found in Counts IV–VI. The arguments made by plaintiffs with respect to Rule 2 of the Federal Rules of Civil Procedure are not applicable. While it is true that there is only one form of action, known as a "civil action" under that Rule, this relates to the distinction between law and equity, and not to questions of federal and state jurisdiction. The latter counts do not state alternative grounds in support of a single cause of action, and thus, do not justify application of the pendent jurisdiction doctrine.

Inasmuch as plaintiff Crest and defendant Ero are both citizens of Illinois, it is clear that complete diversity of citizenship, as required by Sec. 1332, Title 28, U.S.C. is absent. Treinies v. Sunshine Mining Co., 308 U.S. 66, 71, 60 S.Ct. 44, 84 L.Ed. 85 (1939); Soderstrom v. Kungsholm Baking Co., (7th Cir., 1951) 189 F.2d 1008, 1013. Without the presence of such an independent basis of jurisdiction this Court ordinarily would be compelled to dismiss, without more, Counts IV, V, and VI. K. S. Corp. v. Chemstrand Corp. (D.C. N.Y., 1961) 198 F.Supp. 310; Phila. Dressed Beef Co. v. Wilson & Co., (D.C. Pa., 1956) 19 F.R.D. 198.

█ However, a reading of all the pleadings before us reveals that defendant Ero has filed counterclaims dealing, in part, with these same advertising assessments and expenditures. Such counterclaims, to be discussed, infra, are "compulsory" in nature under Rule 13 (a), as they arise out of the same "transaction or occurrence" made subject of the original complaint, i. e. the exclusive dealership agreement. Since these counterclaims are auxiliary to the main claim, no independent jurisdictional grounds are needed to support them, and lack of diversity of citizenship does not defeat them. Moore v. N. Y. Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). Thus, if we were to dismiss Counts IV, V, and VI of the complaint, we would be left with the absurd conclusion that the defendant may sue via counterclaim in federal court on the advertising sections of the contract, while the plaintiff would have to maintain a completely separate suit on the same subject matter in the State Courts. Indeed, were plaintiff to institute such an action in the State tribunals, the defendant conceivably could argue that the action is barred by res judicata in that plaintiff was compelled to assert such claims in federal court and failed to do so.

To escape from this technical bog, this Court shall follow the course suggested by Chief Judge Biggs of the Third Circuit Court of Appeals in Great Lakes Rubber Corp. v. Herbert Cooper, Inc., (3rd Cir., 1961) 286 F.2d 631. In that case, the Court held that after dismissal of the original complaint for lack of federal jurisdiction, and retention of a counterclaim because of independent grounds of federal jurisdiction, the essential allegations of the original complaint could be raised as a compulsory counterclaim to the retained claim, since there was ancillary jurisdiction over the compulsory counterclaim.

Thus, we shall formally dismiss Counts IV, V and VI of the complaint, and, on the Court's own motion, reinstate them at this time as a compulsory counter-counterclaim.

Accordingly, we must then turn to the substantive merits of those claims with respect to defendant's (now, under this Court's current reasoning, counter-counterdefendant's) motion for summary judgment.

Under Paragraph 8 of the franchise contracts, plaintiffs agreed to pay Ero an amount equal to 20 per cent of their purchases, which money was to be expended by Ero for advertising purposes. In Counts IV, V, and VI, plaintiffs allege that Ero did not use that money for advertising as it was required to do.

Pursuant to Rule 56, defendant Ero, in support of its summary judgment motion, has submitted the affidavit of David J. Bitran, its auditor, who had complete control of the books and records covering the transactions in question. That affidavit clearly spells out that not only were plaintiff's advertising remittances spent for the proper purpose, but, in addition, defendant Ero spent considerably more for such advertising than it was obliged to do under the contracts. (see Par. 5, pp. 2, 3, and 4 of Affid.) Mr. Bitran has clearly recited in detail, the amounts which plaintiffs were obliged to remit to Ero, the amounts which they did in fact remit, and the amounts actually expended for advertising purposes.

■ In response, plaintiffs have failed to heed the requirements of Rule 56. A party adverse to a summary judgment motion may not rest upon his pleadings once sworn affidavits have been introduced. (See more detailed discussion with regard to defendant's counterclaims, infra.) Plaintiffs have not made any attempt to refute the accuracy of Mr. Bitran's figures. They have failed completely to submit any documentary evidence to controvert the computations sworn to in that affidavit. Under the clear provisions of Rule 56(e) we must conclude that plaintiff has failed to demonstrate the existence of any material controverted questions of fact, and summary judgment must be entered.

Accordingly, it is the opinion of this Court that summary judgment be granted in favor of defendant Ero on all six counts of the complaint, the latter three being treated for purposes of this motion as plaintiff's compulsory counterclaims.

2) With regard to the motion for summary judgment on defendant's counterclaims, counter-defendants (plaintiffs) have not seen fit to provide this Court with affidavits supporting their position. Said parties will not be permitted to stand on the non-particularized, unverified allegations in their answers to the counterclaims filed herein, in the face of the affidavits and exhibits filed by counter-claimants. See Rule 56, Fed.Rules of Civ.Proc.:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

■ The affidavit of David J. Bitran, auditor of counter-claimant Ero, meets the requirements of Rule 56(e). It is based on personal knowledge, and a detailed account of how such knowledge was obtained is provided (See Par. 2). The Exhibits filed in support of said affidavit add credence to the factual averments, and satisfy Rule 56.

Paragraphs 3(g) and (i) of said affidavit recite that all obligations of the sublessor have been performed with regard to the Count I claims, and that as of March 1, 1965, Crest owed Protecto $5,757.98. The liability of the guarantor is clearly demonstrated in Par. 3(c) and Exh. 2. Similarly, the validity of Counts II and III are demonstrated in Paragraphs 4(e)–(h); the validity of Count IV by Par. 4(i); the validity of Count V in Paragraphs 5(c) and (f); the validity of Count VI in Paragraphs 5(d) and (f); and the validity of Count VII in Par. 5(g) and Exh. 13.

Counter-defendants have not submitted any evidence to refute these sworn factual averments, and rely inadequately on their unverified answers to the counterclaims. The averments of the affi-

davit, supported by the extensive exhibits filed herein, must control. Indeed, counter-defendants do not even deny the accuracy of the sworn facts, but merely question the validity of the affidavit.

It is the opinion of this Court that the affidavit filed herein is proper and meets the test set out in Rule 56.

Accordingly, we must grant summary judgment in favor of the counter-plaintiff Ero (a) against Crest Auto Supplies, Inc. and Albert Garfield, jointly and severally, for $5,757.98; (b) against Protecto of Michigan, Inc., Orville Lefko, George Haar, and Ben Krugel, jointly and severally for $94,948.86; and (c) against Morris Einhorn for $52,968.59.