**John K. WONG and Johnnie B. Lee, on behalf of themselves and all other persons similarly situated, Plaintiffs,**

**v.**

**John W. BACON, A. E. Lafayette, Louis Ottone, Jr., David R. Cox, William W. Ward, Jr., A. L. Diamond, Roy Mack, Everett Matzen, Roy Benner, Edwin Laboure, and James Whiting, Trustees of the California Butchers Pension Trust Fund, Defendants.**

**John K. WONG and Johnnie B. Lee, Plaintiffs,**

**v.**

**John W. BACON, A. E. Lafayette, Louis Ottone, Jr., Lawrence A. Peifer, William W. Ward, Jr., A. L. Diamond, Fred L. Feci, Roy Mack, Everett Matzen, Roy Benner, Edwin Laboure, and James Whiting, Trustees of the California Butchers' Pension Trust Fund, Defendants.**

**Nos. C–75–2481–CBR and 75–2740–CBR.**

United States District Court, N. D. California.

Dec. 27, 1977.

---

See also, D. C., 445 F.Supp. 1189.

**1180**

Hon Chew, John H. Wallace, Oakland, Cal., for plaintiffs.

Charles P. Scully, Donald C. Carroll, Stephen G. Schrey, McLaughlin & Irvin, William B. Irvin, Patrick W. Jordan, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

These related lawsuits involve the right to restitution of various employers who made contributions to the California Butchers' Pension Trust Fund ("Fund") on behalf of individuals who were in fact ineligible to receive benefits from the Fund but whom the employers believed were eligible.

*I. Factual and Procedural Background*

The Fund, whose trustees are defendants in these lawsuits, was established as a trust under the laws of California and under § 302(c)(5) of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c)(5). It has been administered as part of collective bargaining agreements between employers engaged in the wholesale and retail meat industry in California and various Butcher Union locals which are the exclusive bargaining representatives of the employees of those employers.

Under the terms of the trust and the collective bargaining agreements, self-employed individuals and people holding partnership interests of ten percent or more and corporate officers who work less than 50 percent of the time in employment covered by the collective bargaining agreements are not eligible to receive benefits from the Fund. Nevertheless, substantial sums have been paid into the Fund on behalf of members of those groups in the mistaken belief that they were eligible for benefits.[1]

Toward the end of 1974, the Fund discovered that a significant number of employers had mistakenly been making payments into the Fund on behalf of ineligible individuals. Willing to make restitution to those employers and concerned about the effect of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ER-

---

1. It is undisputed that the Fund has no legal authority to pay benefits to otherwise ineligible persons because their employers contributed to the Fund by an innocent mistake of law. *Thurber v. Western Conference of Teamsters Pension Plan,* 542 F.2d 1106, 1109 (9 Cir. 1976).

ISA"), on his ability to do so, the Administrator of the Fund sent on November 25, 1974, a letter to all contributing employers advising them to make a prompt application for refunds of any mistakenly paid contributions.[2] The Administrator subsequently received approximately 100 requests for refunds before December 31, 1974, including one from the named plaintiffs. The Trustees of the Fund adopted a motion requiring payment before December 31, 1974, of refunds upon valid application, but the administrative difficulty of processing the often incomplete claims prevented the Fund from making a decision about the validity of the request and from making the refund before the end of 1974.

The significance of December 31, 1974, is that the fiduciary standards of ERISA became effective on January 1, 1975. Section 414(a), 29 U.S.C. § 1114(a). Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1), prohibited the payment of trust funds to employers except under specified circumstances, and the only exception involving mistaken contributions, § 403(c)(2)(A), permitted the return "of a contribution which is made by an employer by a mistake of fact * * * within one year after the payment of the contribution."[3]

The Fund finished processing the refund claims in March, 1975. Because it concluded on the basis of legal advice that § 403(c)(2)(A) controlled its decision and

permitted refunds only for the year before the actual payment of the refund, the Fund made a partial refund limited to the period March to December, 1974, to employers who mistakenly made contributions.[4]

After the receipt of their partial refund, plaintiffs filed suit in both state court and federal court seeking the remainder of the claimed refund. The state suit, Action No. C–75–2740–CBR, was removed to federal court and related to Action No. C–75–2481–CBR pursuant to now Local Rule 205–2.

The parties have stipulated that Action No. C–75–2481–CBR should be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. On July 15, 1976, the Court designated a class consisting of the following:

"All self-employed individuals and persons holding partnership interests of 10% or greater and corporate officers who work less than 50% of the time in Covered Employment who have made pension benefit contribution payments on their own behalf to the California Butchers' Pension Trust Fund, and who were on the Employer Master List of contributing employers on or about November 25, 1974, and;

"All Employers, whether sole proprietors, partners or corporations, who have made contributions to said Trust Fund on behalf of individual employees who, by reason of their capacity or classification of employment, were or are not engaged

2. The letter set forth in general terms the eligibility requirements of the Fund, advised employers to consult their attorneys if in doubt about the eligibility of a particular individual, and requested prompt notification to the Fund of incorrect contributions. The last paragraph read:

"Section 403(c) of the Employee Retirement Income Security Act of 1974 prohibits the return of such contributions to the Employer within [sic] one year after the payment of the contribution. If any such payments have been erroneously paid, application for refunds and/or adjustments must be filed with the office of the Fund prior to January 1, 1975 or the one year provision of the new law will be applicable."

3. Those provisions read in full:

"(c)(1) Except as provided in paragraph (2) or (3) or subsection (d) of this section, or under section 1342 and 1344 of this title (relating to

termination of insured plans), the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

"(2)(a) In the case of a contribution which is made by an employer by a mistake of fact, paragraph (1) shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution."

4. It is not entirely clear whether the refunds covered the entire year prior to March 1975. However, it is undisputed that named plaintiffs were only reimbursed for March to December 1974. It may have been that after December 1974 they ceased making payments to the Fund.

in Covered Employment under a Collective Bargaining Agreement with a Butchers' Union Local within the meaning of the California Butchers' Pension Trust Fund Pension Plan and Trust Agreement, and who were on the Employer Master List of contributing employers on or about November 25, 1974."

The parties estimate that the members of that class seek refunds of mistaken contributions totalling approximately $250,000.[5]

The basic relief sought by plaintiffs in the suit commenced in federal court is a declaratory judgment that plaintiffs' claims are governed by California law, which both parties agree gives plaintiffs a right to restitution. Defendants' position is not completely adversary. They would like to make a complete refund to plaintiffs but are unsure of their legal authority to do so, although they argue that § 403(c)(2)(A) of ERISA, which they contend controls the scope of their authority, permits restitution of contributions paid under mistake of law.[6]

Cross-motions for summary judgment are currently pending before the Court. Before deciding those motions, the Court must straighten out the jurisdictional posture of the case.

## II. *Jurisdiction*

■ Before reaching the merits of this or any other lawsuit, the Court must satisfy itself that it has jurisdiction. The parties have not focused on this issue, but the Court is obligated to raise the issue *sua sponte* in cases where jurisdiction is in doubt. Fed.R.Civ.P. 12(h)(3); *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 588, 59 S.Ct. 744, 83 L.Ed. 1001 (1939).

### A. *Jurisdiction over Plaintiffs' Declaratory Judgment Action*

■ In their complaint in No. C–75–2481–CBR, plaintiffs allege jurisdiction only under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. By itself, that jurisdictional allegation is clearly inadequate because the Declaratory Judgment Act does not confer substantive jurisdiction on the federal courts and only permits them to provide a different kind of remedy in cases for which they had an independent basis of jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Montana Power co. v. EPA*, 429 F.Supp. 683, 692 (D.Mont.1977). The failure to comply with the requirement of Rule 8(a)(1) of the Federal Rules of Civil Procedure that the complaint contain "a short and plain statement of the grounds upon which the court's jurisdiction depends" does not require dismissal for lack of jurisdiction provided that the complaint reveals a proper basis for jurisdiction. *Kelly v. West Baton Rouge Parish School Board*, 517 F.2d 194, 197 (5 Cir. 1975) (alternative ground); *New York State Waterways Ass'n, Inc. v. Diamond*, 469 F.2d 419, 421 (2 Cir. 1972); *Williams v. United States*, 405 F.2d 951, 954 (9 Cir. 1969); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1206 at 77–78 & n.66 (1969) (hereinafter cited as Wright & Miller).

■ There is no independent basis for federal jurisdiction over plaintiffs' claim because plaintiffs explicitly want a federal forum to litigate a possible federal defense to a state claim for restitution. The nature of the claim must be determined from the face of the complaint, *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–128, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974) (*per curiam*); *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Gold-Washing & Water Co. v. Keyes*, 96 U.S. 199, 24 L.Ed. 656 (1877); *Smith v. Grimm*, 534 F.2d 1346, 1350 (9 Cir.

---

5. Some claims for refunds concern contributions made after January 1, 1975, the effective date of ERISA.

6. Both parties agree that plaintiffs made a mistake of law, not of fact. The employers knew the facts relevant to eligibility for benefits from the Fund, but they misapplied the contractual standards of eligibility to the facts as they knew them. *See* Cal.Civ.Code §§ 1577 (mistake of fact), 1578 (mistake of law); *cf. Baratti v. Baratti*, 109 Cal.App.2d 917, 242 P.2d 22, 25 (1952) (mistake of law where person knew facts and misunderstood legal consequences).

1976), and the claim plaintiffs assert in their amended complaint is a right to restitution under California law. According to the amended complaint, the "exclusive jurisdiction" over the action lies in the state courts. The fact that "[n]owhere does the complaint allege that any federal statute or constitutional provision is the basis for this cause of action" also suggests that plaintiffs' claim relies exclusively on state law. *See Smith v. Grimm, supra,* 534 F.2d at 1350.

■ Even if ERISA might create a substantive law of restitution for mistake, see p. 1185, *infra,* that claim does not appear from the face of the complaint and in fact directly contradicts its theory. That plaintiffs could have pleaded in the alternative a state and a federal claim for restitution is not enough because the presence of a federal question in a claim for relief depends not on how the claim might have been formulated but on how it is in fact formulated. *Pan American Petroleum Corp. v. Superior Court,* 366 U.S. 656, 662–663, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961) ("operative paragraphs" of complaint seek recovery under state law, so case not cognizable in federal court even though plaintiffs have possible federal claim); 5 Wright & Miller § 1238, at 204 & n.55.

■ The only relief sought by plaintiffs is a declaratory judgment concerning defendants' possible defense to their state claim for restitution. They want the Court to rule that defendants' preemption defense based on ERISA is without merit either because ERISA does not preempt their state claim or because ERISA is unconstitutional if it does. Plaintiffs are simply attempting to litigate in federal court a federal defense to a state cause of action, and that the Declaratory Judgment Act does not permit them to do. *Skelly Oil Co. v. Phillips Petroleum Co., supra,* 339 U.S. at 672, 70 S.Ct. 876; *see Gully v. First Nation-*

*al Bank, supra,* 299 U.S. at 113, 57 S.Ct. 96; *Rath Packing Co. v. Becker,* 530 F.2d 1295, 1304 (9 Cir. 1975); *aff'd on other grounds,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

Defendants may obliquely suggest that § 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), gives the Court jurisdiction over plaintiffs' claim. Section 502(e)(1) gives federal courts jurisdiction not over state claims like plaintiffs' but over civil actions established in § 502(a). Furthermore, employers who contribute to employee benefit plans do not fit in any of the four limited categories of plaintiffs in § 502(e)(1), the Secretary of Labor, participants, beneficiaries, and fiduciaries. *See Hibernia Bank v. International Brotherhood of Teamsters,* 411 F.Supp. 478, 488 (N.D.Cal.1976).[7]

### B. Jurisdiction over Plaintiffs' State Suit

■ The Court also lacks jurisdiction over the lawsuit which plaintiffs began in state court and was removed here. Section 1441(a) of Title 28 of the United States Code permits removal to federal courts only of civil actions "brought in a State court of which the district courts of the United States have original jurisdiction," *Snow v. Ford Motor Co.,* 561 F.2d 787, 789–790 (9 Cir. 1977), and this Court has no original jurisdiction over a claim for restitution under California law. The removed case, C–75–2740–CBR, must therefore be remanded to state court in compliance with 28 U.S.C. § 1447(c), which provides:

"If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and * * * [t]he State court may thereupon proceed with such case."

### C. Jurisdiction over Defendants' Counterclaim

■ Dismissal of plaintiffs' claim for lack of subject matter jurisdiction does not

---

**7.** In their papers on the pending summary judgment motions, the parties have discussed jurisdiction under §§ 301(a) and 302(e) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §§ 185(a) and 186(e), but plaintiffs failed to raise these claims in their amended complaint. Furthermore, both plaintiffs and defendants agree that the LMRA does not affect plaintiffs' right to restitution.

necessarily terminate this litigation. If a defendant makes a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure for which the court has an independent basis for federal jurisdiction, the court retains jurisdiction over the counterclaim despite the dismissal of the initial complaint. *International Video Corp. v. Ampex Corp.*, 484 F.2d 634, 636–637 (9 Cir. 1973); *National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 388–389 (3 Cir. 1973); *Pioche Mines Consol., Inc. v. Fidelity-Philadelphia Trust Co.*, 206 F.2d 336, 336–337 (9 Cir. 1953); 6 Wright & Miller § 1414, at 80 & n.87.[8]

■ Defendants' answers to plaintiffs' amended complaint can fairly be read to allege a counterclaim for a declaratory judgment against plaintiffs. Although defendants do not explicitly designate their defenses as counterclaims, "a pleading should not be dismissed merely because it improperly designates * * * a counterclaim as a defense." 6 Wright & Miller § 1407, at 31 & n.97. Because "justice so requires," the Court "shall treat the pleading as if there had been a proper designation." Fed.R.Civ.P. 8(c). In their answer, defendants do not merely seek the converse of the relief sought by plaintiffs, a declaratory judgment that ERISA and not state law applies to plaintiffs' claim for restitution. Defendants also want a declaratory judgment that the provisions of ERISA "govern the right and power of defendants, as trustees, to return contributions of employees [*sic*], including plaintiffs, not refunded on or before December 31, 1974" and that ERISA permits restitution for con-

tributions paid by mistake of law under the circumstances of this case. The counterclaim is compulsory because it obviously "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a).

■ The Court has an independent basis for jurisdiction over this counterclaim. If defendants' counterclaim for a declaratory judgment sought only to raise a federal defense to plaintiffs' state cause of action, the federal Declaratory Judgment Act would not authorize the Court to grant that relief. A defendant, like a plaintiff, cannot use the Act to litigate in federal court a federal defense to a state cause of action. *Public Service Comm'n v. Wycoff*, 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Rath Packing Co. v. Becker, supra*, 530 F.2d at 1303–1304. The Act requires an independent basis of jurisdiction over the plaintiff's potential claim for coercive relief.

■ In addition to 28 U.S.C. §§ 2201 and 2202, however, defendants allege jurisdiction under § 502 of ERISA, 29 U.S.C. § 1132.[9] The Court concludes that defendants have stated a cause of action under § 502(a)(2) over which it has jurisdiction pursuant to § 502(e)(1).

Section 502(e)(1) gives federal district courts "exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary." One civil action under the sub-

---

**8.** In *Boynton v. United States*, 566 F.2d 50 (9 Cir. 1977), the Court of Appeals for the Ninth Circuit affirmed this general principle but recognized a narrow exception in certain tax cases. The court's dismissal of the Government's counterclaim to plaintiffs' tax refund suit was compelled because adjudication of the counterclaim would have "vitiate[d] the heart of this elaborate scheme [to require] payment of the taxes before litigation of the issues in a District Court." At 53. The concern which dictated the result in *Boynton*, the efficient administration of the federal tax laws, is not relevant in this case. Indeed, efficient administration of ERISA *is* furthered, not undercut, by

the Court's retention of jurisdiction over defendants' counterclaim. See pp. 1185–1186, *infra*.

**9.** Defendants also include § 514 of ERISA, 29 U.S.C. § 1144, and § 401 of the Internal Revenue Code, 26 U.S.C. § 401, in their allegation of jurisdiction. Section 514 of ERISA deals with the effect of ERISA on other state and federal laws and does not provide a grant of subject-matter jurisdiction. The Court need not consider its alleged jurisdiction under § 401 of the Internal Revenue Code in light of its conclusion that jurisdiction rests on other independent grounds.

chapter, § 2–514, 29 U.S.C. §§ 1001–1144, is established in § 502(a)(2). Under § 502(a)(2), the fiduciary of an employee benefits plan covered by ERISA can sue in federal district court "for appropriate relief" under § 409, 29 U.S.C. § 1109, which makes fiduciaries subject to both monetary and "other equitable or remedial relief as the court may deem appropriate" for breach of their fiduciary duties established by ERISA. The Court concludes that the declaratory judgment sought by defendants is "appropriate relief" within the meaning of § 502(a)(2).[10]

Declaratory judgments are generically within the scope of § 502(a)(2). The duties of fiduciaries established by ERISA are often unclear in the face of conflicting claims on the assets of the benefit plans by participants, beneficiaries and contributing employers. Under these circumstances, fiduciaries have a strong need to obtain guidance from the courts. Without such guidance, either they would have to make a payment to a claimant and risk civil liability under § 409 if they misconceived their duty, or they would have to refuse to pay a claimant and risk a lawsuit by that claimant. The latter alternative is not satisfactory for the fiduciary because the claimant may delay instituting the lawsuit and create a contingent liability (in this case, amounting to a quarter of a million dollars) which impairs the fiduciary's ability to manage the assets of the fund and to plan for the future. Trustees have traditionally been able to obtain a declaratory judgment concerning their federal fiduciary duties, *see, e. g., Bath v. Pixler*, 283 F.Supp. 632, 635 (D.Colo. 1962), and § 502(a)(2) was intended in part to give ERISA fiduciaries that option.

**10.** Defendants' counterclaim may also be a civil action within the scope of § 502(a)(3)(B)(ii) "to obtain other appropriate equitable relief * * * to enforce any provisions of [subchapter 1] or the terms of the plan * * *." The Court need not address this issue.

**11.** The Court stresses that it does not decide the merits of defendants' claim. To determine that it has jurisdiction to decide the merits, it need only make certain that the federal law

It is appropriate that federal courts be available to provide this relief. Defendants have made a substantial claim that federal law governs their ability to make restitution.[11] Section 403(c)(2)(A), which authorizes the trustees to return a contribution which is made by an employer by mistake of fact, may establish a substantive federal law of restitution by ERISA plans. According to the House Conference Committee on ERISA, actions in state and federal courts involving breach of fiduciary responsibilities "are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947." H.Conf.Rep.No.93–1280, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin. News, pp. 5038, 5107; *Cf. Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (§ 301 common law). The interpretation of "mistake of fact" in § 403(c)(2)(A) is a matter of federal law. The only portion of the legislative history dealing with that phrase indicates that Congress intended to permit restitution in only a limited class of cases, such as when "an employer may have made an arithmetical error in calculating the amounts that were to be contributed to the plan. H.Conf.Rep.No.93–1280, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin. News, pp. 5038, 5083. This federal law may supersede state law to the extent state law authorizes restitution from employee benefit plans under other circumstances. Section 502(a)(2) gave the federal courts a role to play in the development of this federal law of restitution from ERISA trusts.

The appropriateness of a federal, as distinguished from state, forum is signalled by Congress' decision in § 502(e)(1) to give federal courts exclusive jurisdiction over

issue "is neither 'frivolous or insubstantial,' nor put forth solely to gain federal jurisdiction." *Garrett v. T.I.M.E.–D.C., Inc.*, 502 F.2d 627, 629 (9 Cir. 1974) (analogous requirement of 28 U.S.C. §§ 1331 and 1337 that claim arising under federal law be substantial), *cert. denied*, 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975); *Hagans v. Lavine*, 415 U.S. 528, 536–538, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (meaning of substantiality).

claims involving breach of fiduciary duties. Congress wanted federal courts to elaborate the broad fiduciary standards laid down in ERISA, and the transfer of assets from benefit plans to contributing employers clearly implicates those standards. *See* § 403(c)(2)(A); § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D) (fiduciary cannot cause plan to engage in "transfer to * * * a party in interest [defined in § 3(14)(C), 29 U.S.C. § 1102(14)(C), to include contributing employers], of any assets of the plan * * ").

For these reasons, § 502(a)(2) gives defendants an opportunity to obtain from this Court a declaration of their claimed right under federal law to make restitution to plaintiffs.

▮ ˙ This interpretation is valid even though it may mean a potential defendant can litigate in federal court a federal defense to a cause of action created by state law that the potential plaintiff could not bring in federal court.[12] Although the Declaratory Judgment Act does not permit a potential defendant to do this, the remedial provisions of ERISA were designed to do more than those of the Declaratory Judgment Act. Unlike the Declaratory Judg-

**12.** It is possible that claims for restitution of employers who make contributions by mistake of law arise under federal law even if state law creates the cause of action. If that were true, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, as well as § 502(a)(2) of ERISA, might permit the Court to entertain defendants' counterclaim because § 2201 allows a potential defendant to litigate in federal court a defense to a claim arising under federal, as distinguished from state, law over which federal courts would have original jurisdiction.

If § 403(c) creates a federal substantive law of restitution which controls plaintiffs' claim for restitution, *see* p. 1185, *supra*, that claim would be controlled by federal law and might arise under federal law even though state law creates the cause of action for restitution. *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243, 65 L.Ed. 577 (1921) (federal jurisdiction over claim that directors of Missouri corporation breached duty to Missouri shareholders by investing in bonds illegal under federal law); *Garrett v. T.I.M.E.–D.C., Inc., supra*, 502 F.2d at 629 (federal jurisdiction under 28 U.S.C. § 1337 if "suit hinges on the interpretation" of federal law regulating commerce); *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3 Cir. 1974) ("action arises under the laws of the United States if and only if * * * it requires a construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition"); *McFaddin Express, Inc. v. Adley Corp.*, 346 F.2d 424, 425–426 (2 Cir. 1965) (*T. B. Harms* test applicable to §§ 1331 and 1337); *T. B. Harms Co. v. Eliscu*, 339 F.2d 823, 826–828 (2 Cir. 1964) (§ 1338 jurisdiction if complaint "presents a case where a distinctive policy of the [Copyright] Act requires that federal principles control the disposition of the claim"); *Voight v. Kraft*, 342 F.Supp. 821, 822 (D.Idaho 1972) (follows *T. B. Harms*); American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, at 179 (1968); 13 Wright & Miller § 3562, at 412–413.

Federal law does not explicitly create a cause of action for plaintiffs because employers are not among the four classes of plaintiffs included in § 502(a), and plaintiffs may not have an implied right of action under ERISA because a court cannot infer a private cause of action from a statute which specifically enumerates other private causes of action in the absence of clear evidence of legislative intent. *National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

That plaintiffs potentially have a cause of action arising under federal law does not necessarily mean that a federal court has jurisdiction over that claim. Section 1331(a) imposes a $10,000 amount-in-controversy requirement, and none of the claims of individual plaintiffs appear to satisfy that requirement and aggregation of their claims is improper. *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *Snow v. Ford Motor Co.*, 561 F.2d 787 (9 Cir. 1977).

A federal court might have jurisdiction under 28 U.S.C. § 1337, which has no amount-in-controversy requirement and which gives federal courts jurisdiction over civil actions "arising under any Act of Congress regulating commerce * * *." To bring themselves within § 1337, plaintiffs would have to establish (1) that ERISA is an act regulating commerce, *see* § 2, 29 U.S.C. § 1001, and (2) that their claim arises under § 403 and not only under a federal common law of restitution. A federal common law right does not confer § 1337 jurisdiction, *Garrett v. T.I.M.E.–D.C., Inc., supra*, 502 F.2d at 630 (dictum), although possibly a suit arising under federal common law which fleshes out an Act of Congress regulating commerce can be said to arise under that Act.

The route to relief through the Declaratory Judgment Act is long, complicated, and uncertain. The Court therefore rests its decision solely on jurisdiction under § 502 of ERISA.

ment Act which only "enlarged the range of remedies available in federal court" without enlarging its jurisdiction, *Skelly Oil Co. v. Phillips Petroleum Co., supra,* 339 U.S. at 671, 70 S.Ct. 876, the provisions of ERISA concerning civil enforcement of its substantive provisions were intended to give federal courts jurisdiction over a whole range of cases that were not previously cognizable in federal court. *See* H.Conf. Rep.No.93–1280, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News, pp. 5083, 5107; S.Rep.No.93–127, 93d Cong., 2d Sess., *Id.* at 4834, 4871. ERISA was designed to expand the jurisdiction of the federal courts.

If § 502(a)(2) is interpreted to incorporate the limitations of the Declaratory Judgment Act, the purposes of § 502 would be defeated. Although Congress gave federal courts exclusive jurisdiction over claims involving breach of fiduciary duties, § 502(e)(1), a restrictive interpretation of § 502(a)(2) would limit the federal courts' role in the development of fiduciary standards in the context of restitution to contributing employers. The Court is reluctant to read such limitations into § 502(a)(2) without any explicit indication that Congress intended to impose those limits.

### D. Discretion over Declaratory Judgments

■ Although the Court has jurisdiction over defendants' counterclaim for a declaratory judgment, it has the power not to exercise this jurisdiction. Under the Declaratory Judgment Act, "the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest." 10 Wright & Miller § 2759, at 784 & nn. 15–17. The same principle applies to actions under § 502(a)(2) of ERISA, for that section permits the court to grant relief only where it is "appropriate" and discretion has always been part of the equitable remedies, including declaratory judgments.

Because plaintiffs' improperly removed state suit will be remanded to state court, see p. 1183, *supra,* this case is in the pos-

ture that the Trustees are attempting to litigate in federal court a federal defense to a state claim that has been asserted in a pending state proceeding. Moreover, plaintiffs filed their state court action before defendants filed their counterclaim to plaintiffs' federal court action.

■ The existence of a pending state proceeding involving the same claim for restitution does not automatically make declaratory relief improper. *McGraw-Edison Co. v. Preformed Line Products Co.,* 362 F.2d 339, 342–343 (9 Cir. 1966), *quoting Yellow Cab Co. v. City of Chicago,* 186 F.2d 946, 950–951 (7 Cir. 1951). Rule 57 of the Federal Rules of Civil Procedure provides that the "existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Federal courts have properly been reluctant to grant a declaratory judgment where the state proceeding is not only possible but is in fact pending, see 10 Wright & Miller § 2758, at 775–780, but the decisive consideration is which action "will most fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict." *Id.,* at 779 & n. 4; *McGraw-Edison Co. v. Preformed Line Products Co., supra,* 362 F.2d at 342; *see Continental Insurance Co. v. Bayless & Roberts, Inc.,* 366 F.Supp. 287 (D. Alaska 1973) (fact that pending state action begun second not determinative), *aff'd,* 503 F.2d 1379 (9 Cir. 1974) (memorandum decision).

■ For several reasons, the Court concludes that it should exercise its jurisdiction over this declaratory judgment action.

First, there has been no progress in the state suit. No "proceedings of substance on the merits" have occurred in state court. *Cf. Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975) (injunctive and declaratory relief by federal court concerning pending state criminal proceeding improper if state proceedings began after federal proceedings but before "any proceedings of substance on the merits").

Second, the federal action is far advanced. Not only have the parties fully briefed and argued the merits, but plaintiffs have spent substantial sums notifying the members of the class they represent. Dismissal of defendants' counterclaim would make that money wasted and would require the parties to start all over again in state court.

▉ Third, all the parties want this Court to handle the case. The parties cannot by mutual consent give the Court jurisdiction to decide a case not otherwise within the jurisdiction that Congress has conferred on federal district courts, but the attitude of the parties is relevant to a determination whether equity permits the relief sought by the parties.

Fourth, by giving federal courts exclusive jurisdiction over § 502(a)(2) suits, § 502(e)(1) establishes a federal policy favoring federal adjudication of the content of fiduciary duties under ERISA.

Fifth, the only dispute in this case is not factual but legal, and the dominant legal disputes involve not state but federal law. It would be ironic for a federal court to defer to a state court for a determination of federal law that Congress wanted the federal courts to decide.

Consequently, federal declaratory relief is proper in this case.

### E.  *Plaintiffs' Claim as a Counterclaim*

The Court, however, considers it inadvisable to reach the merits of defendants' claim with the case in this posture. If the Court were to decide that ERISA did not preempt plaintiffs' state claim for restitution, the parties apparently would still want to litigate some issues concerning the state claim, including a possible defense based on a state statute of limitations. That opportunity would not be available in this Court if it decided the preemption issue in plaintiffs' favor because the one claim before the Court—defendants' declaratory judgment claim—would be adjudicated and the Court could not exercise pendent jurisdiction with respect to plaintiffs' state claim. That re-

sult would require the parties to litigate possible state law issues in state court, with the concomitant expense of instituting a new lawsuit and certifying a new class.

▉ In order to avoid that undesirable result, the Court will postpone its adjudication of defendants' claim in order to give plaintiffs an opportunity to file a counterclaim for restitution based on state law. Federal courts have ancillary jurisdiction over compulsory counterclaims even if they would not have jurisdiction over the claim as an independent action. *Baker v. Gold Seal Liquors,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974) (*dictum*); *Moore v. N. Y. Cotton Exchange,* 270 U.S. 593, 607–610, 46 S.Ct. 367, 70 L.Ed. 750 (1926); *Pipeliners Local Union No. 798 v. Ellerd,* 503 F.2d 1193, 1198 (10 Cir. 1974); *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 633 (3 Cir. 1961); 6 Wright & Miller § 1414, at 69 & n. 55. If a federal court has jurisdiction over a compulsory counterclaim with an independent jurisdictional basis (such as defendants' claim), the original plaintiff can reassert a dismissed claim as a compulsory counterclaim because the original plaintiff's claim will be within the ancillary jurisdiction of the court. *Byrnes v. Faulkner, Dawkins & Sullivan,* 362 F.Supp. 864, 868–870 (S.D.N.Y. 1973); *Crest Auto Supplies, Inc. v. Ero Mfg. Co.,* 246 F.Supp. 224, 229 (N.D.Ill.1965), *aff'd on other grounds,* 360 F.2d 896 (7 Cir. 1966); 6 Wright & Miller § 1414, at 80–81 & n. 88. Just as defendants' claim is a compulsory counterclaim to plaintiffs' initial claim, plaintiffs' state law claim would be a compulsory counterclaim to defendants' federal declaratory judgment action.

▉ Federal courts can decide the merits of a compulsory counterclaim without an independent basis of federal jurisdiction even if the plaintiffs' claim is decided on the merits. See pp. 1183–1184, *supra.* Accordingly, the Court could adjudicate the merits of plaintiffs' state claim for restitution if it adjudicated defendants' claim against defendants.

The Court will therefore give plaintiffs an opportunity to formally file a counter-

claim based on state law within ten days of the date of this order.[13] The Court recognizes that if plaintiffs use this opportunity, this lawsuit will in substance be in exactly the same posture as it began. At least one court has considered this sufficient justification for reinstating plaintiffs' claims as counterclaims on its own motion. *Crest Auto Supplies, Inc. v. Ero Mfg. Co., supra,* 246 F.Supp. at 229. But the harder way is sometimes better. This Court agrees with the court in *Byrnes v. Faulkner, Dawkins & Sullivan, supra,* that

> "it is not permissible for the District Court to fudge the question of federal jurisdiction. The use of the declaratory judgment procedure, as exemplified by this case, may not be allowed to pass *sub silentio,* for even though the precedents set by this Court are not high authority, rulings by silence have a way of becoming precedents." 362 F.Supp. at 870.

### III. *Order*

IT IS HEREBY ORDERED that plaintiffs' claim for a declaratory judgment in C–75–2481–CBR is dismissed for lack of subject-matter jurisdiction.

IT IS HEREBY FURTHER ORDERED that plaintiffs' claim for restitution in C–75–2740–CBR is remanded to the Municipal Court for the Richmond Judicial District, County of Contra Costa, State of California.

IT IS HEREBY FURTHER ORDERED that plaintiffs have leave to file the substance of their claim for restitution in C–75–2740–CBR as a counterclaim in C–75–2481–CBR within ten (10) days of the date of this order.

---

**13.** After ten days have passed since the date of the order, the Court will consider the merits of the pending cross-motions for summary judgment without the necessity of the parties filing new motions and new memoranda in support of them.