**UNITED STATES STEEL CORPORA-
TION, Plaintiff-Appellant,**

v.

**COMMONWEALTH OF PENNSYLVA-
NIA HUMAN RELATIONS COMMIS-
SION; its Executive Director Homer C.
Floyd; Rebecca Horner and Marcia Ball
Dee, Defendants-Appellees.**

No. 81–1783.

United States Court of Appeals,
Third Circuit.

Argued Nov. 10, 1981.

Decided Jan. 13, 1982.

Walter P. DeForest, Martha Hartle Munsch, Hollis T. Hurd, Reed, Smith, Shaw & McClay, James T. Carney (argued), Pittsburgh, Pa., for plaintiff-appellant U. S. Steel Corp.

Ellen M. Doyle (argued), Pennsylvania Human Relations Com'n, Pittsburgh, Pa., Robert S. Mirin, Pennsylvania Human Relations Com'n, Harrisburg, Pa., for defendants-appellees.

Before SEITZ, Chief Judge, GARTH, Circuit Judge, and POLLAK,* District Judge.

## OPINION OF THE COURT

LOUIS H. POLLAK, District Judge.

I.

In October of 1974, Rebecca Horner, of Pittsburgh, filed a complaint with the Pennsylvania Human Relations Commission (PHRC), charging that her employer, United States Steel Corporation, "has discriminated against herself and other similarly situated females" in contravention of the

---

\* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsyl-

vania, sitting by designation.

applicable state anti-discrimination statute. Appendix at 8. The gravamen of the complaint was that United States Steel's employee benefit plans, in allocating hospitalization and disability benefits, did not treat pregnancy on a parity with other, non-gender-bound, "temporary physical disabilities." *Ibid.* In 1975, PHRC's federal counterpart, the Equal Employment Opportunity Commission (EEOC), filed suit against United States Steel in the Western District of Pennsylvania, charging that the differential treatment accorded pregnancy violated Title VII of the 1964 Civil Rights Act. In view of the pendency of the federal litigation, PHRC stayed its hand. But in 1976 the Supreme Court decided, in *Gilbert v. General Electric*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343, that a benefit plan giving short shrift to pregnancy did not contravene Title VII as it then stood.[1] So, in 1977, EEOC dropped its suit against United States Steel. Whereupon PHRC resumed consideration of Mrs. Horner's complaint, which was supplemented in 1978 by a similar complaint filed by another United States Steel employee, Marcia Ball Dee.

Pursuant to its investigation, PHRC addressed interrogatories to United States Steel.[2] The interrogatories sought information, commencing in October of 1971, about (a) temporary disability benefits paid out to any of the company's Pennsylvania employees, and (b) Pennsylvania employee pregnancies for which temporary disability benefits were not paid. United States Steel resisted assembling and turning over the massive data[3] requested by PHRC. One of the grounds for resistance appears to have been United States Steel's view that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* —under whose aegis the United States Steel benefit plans are administered— preempts the field, precluding inquiry by a state agency such as PHRC.[4]

On April 8, 1980, PHRC transformed its interrogatories into a subpoena duces tecum, returnable May 12, 1980. On April 22, 1980—three weeks before the subpoena's return date—United States Steel instituted this law suit in the Western District of Pennsylvania. The defendants were PHRC and its Executive Director Homer C. Floyd, plus the two complainants, Mrs. Horner and Mrs. Dee. Announcing that "[t]he field of employee benefit plans ... has been preempted by the federal labor policy ... and particularly by ERISA,"[5] the complaint sought (1) a declaration that PHRC's "interrogatories and ... subpoena be null and

---

1. In 1978, Congress amended Title VII to undo *Gilbert.* The Pregnancy Disability Act, Pub.L. No. 95–555, 42 U.S.C. § 2000e(k). United States Steel thereafter amended its plan.

2. The brief filed in this court by appellees (PHRC and its co-defendants) gives the date of the interrogatories as December 19, 1977, Brief of Appellees at 3, which corresponds with the date appearing in paragraph 12 of the complaint filed by United States Steel (plaintiff in the court below), Appendix at 4; but the parties would appear to be in error by a matter of two years: The PHRC letter to D. W. Braithwaite, United States Steel's Director of Corporate Employment, which embodies the interrogatories, bears the date December 19, 1979, Appendix at 16, was stamp-dated "received" on December 21, 1979 (*ibid.*), and "[s]hortly after December 19, 1979" was forwarded by Mr. Braithwaite to Richard G. Ley, United States Steel's Assistant Manager—Equal Employment Opportunity, Affidavit of Richard G. Ley, Appendix at 37.

3. Between 1971 and 1980, United States Steel employed a daily average of 51,000 persons in Pennsylvania; for the nine-year span this aggregated about 125,000 persons. Affidavit of Richard G. Ley, Appendix at 38.

4. Section 514 of ERISA, 29 U.S.C. § 1144, in pertinent part, provides:

   (a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

   (b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

5. The complaint also asserted that the National Labor Relations and Labor-Management Relations Acts had preemptive effect; but see note 6, *infra.*

void," and (2) an injunction barring all of the defendants from further pursuit of the Horner and Dee charges. Appendix at 5, 6–7.

The jurisdictional bases chiefly asserted were two: *First*, United States Steel relied upon section 502 of ERISA, which confers "exclusive jurisdiction" on district courts to entertain civil actions "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan," 29 U.S.C. § 1132(a) & (e)(1). *Second*, United States Steel relied on 28 U.S.C. § 1337, supplemented by 28 U.S.C. § 2201, contending that the case was, within the meaning of 28 U.S.C. § 1337, one "arising under" an act regulating commerce—namely, ERISA—and, further, that declaratory relief was authorized by 28 U.S.C. § 2201.[6]

The district court granted defendants' motion to dismiss: *First*, the court held that, as an "employer," United States Steel was not, within the meaning of section 502 of ERISA, a "participant, beneficiary, or fiduciary" of an employee benefit plan, and hence lacked standing to invoke the jurisdiction conferred by section 502. *Second*, the district court held that United States Steel's claim of federal preemption did not "arise under" ERISA, within the meaning of 28 U.S.C. § 1337, but was rather a potential federal defense to PHRC's state inquiry and the PHRC subpoena which was ancillary thereto.

United States Steel has appealed from the order of dismissal.

## II.

We first address the district court's determination that United States Steel lacked standing to sue under section 502 of ERISA. As noted, that section confers standing on "a participant, beneficiary, or fiduciary" of an employee benefit plan. United States Steel contended below—as it contends here—that it is a "fiduciary" with respect to the employee benefit plans embracing the insurance and disability provisions challenged by Mrs. Horner and Mrs. Dee. ERISA defines a "fiduciary" as, *inter alia*, one who "... exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or ... has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The district court did not find that United States Steel is not a "fiduciary" with respect to its employee benefit plans. Indeed, on the record before the district court, it seems improbable that such a finding could have been made, since the uncontroverted affidavit of L. A. Valli, Vice-President—Employee Benefits, established that United States Steel (a) has sole authority to determine and alter the terms of its employee health insurance plan, and (b) has that authority plus full authority to administer its salary continuance plan for employees suffering disability.[7] What the district court did find was that United States Steel's "complaint makes no allegation of fiduciary status," and that whereas "its supporting brief makes the purely con-

---

6. The complaint also attempted to bottom jurisdiction on the labor relations acts. The district court found that this asserted basis of jurisdiction had been abandoned. United States Steel argues here that there was no abandonment and presses this jurisdictional claim anew. In light of our disposition of the case, we do not find it necessary to address the issue.

7. See especially paragraphs 4–6. Affidavit of L. A. Valli, Appendix at 41. *Cf. Eaves v. Penn*, 587 F.2d 453 (10th Cir. 1978); *Fentron Industries v. Shopmen's Pension Fund*, 2 Employee Benefits Cas. 1121 (W.D.Wash.1981).

clusory statement that 'United States Steel is entitled to bring this action because of its status as "fiduciary" under ERISA,'" in that same brief "plaintiff accurately identifies itself 'Under the terms of ERISA, United States Steel is an "employer."'"[8] *United States Steel Corp. v. Pennsylvania Human Relations Comm'n,* No. 80–534 (W.D.Pa. March 19, 1981) (Mem.Op.) at 4; Appendix at 46. The district court then reasoned: "Given ERISA's functionally distinct definition of employer and fiduciary, it is most unlikely that Congress considered them to be one and the same." *Id.* at 5; Appendix at 47.

We disagree. ERISA is a major and very elaborate legislative enterprise intended to secure employee entitlements of immense economic value. We think that, if Congress had intended to debar an "employer" from assuming the powers—and, more important, the manifold burdens and potential liabilities—of a "fiduciary" with respect to an employee benefit plan, that intention would have been explicitly and unambiguously embodied in the statute. ERISA nowhere so declares. To the contrary, to the extent that the statute speaks to the matter at all, it contemplates that there will be situations in which an "employer" will elect to serve as a "fiduciary" for its employee benefit plan. Telling evidence to this effect is to be found in the very next paragraph of ERISA following the definition of "fiduciary": that next paragraph excludes from fiduciary status an investment company, or the investment adviser or principal underwriter thereof, where assets of an employee benefit plan are invested in securities of such investment company, if the investment company is registered under the Investment Company Act of 1940; but the exemption from fiduciary status is limited by a significant proviso—namely, that it does not apply "insofar as such investment company or its investment adviser or principal underwriter acts in connection with an employee benefit plan covering employees of the investment company, the investment adviser, or its principal underwriter." 29 U.S.C. § 1002 (21)(B). *Cf.* 29 U.S.C. § 1108(b)(4).

The legislative presupposition that, not infrequently, the same entity would be both "employer" and "fiduciary" carried forward into the Secretary of Labor's interpretative regulations. *See* 29 C.F.R. §§ 2509.75–5, FR–3 and 2509.75–8, D–4. And the decided cases conform to this construction of ERISA. *See General Motors Corp. v. Townsend,* 468 F.Supp. 466 (E.D.Mich.1976);[9]

---

**8.** ERISA defines "employer" as: "Any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5).

**9.** In *Townsend,* the court observed (468 F.Supp. at 467):

The plaintiff herein, General Motors Corporation, is a fiduciary of the Retirement Program as defined by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq., 29 U.S.C. § 1002(21). General Motors established the Retirement Program in 1950 to provide benefits to salaried employees after retirement from active employment. On January 1, 1976, the retirement program came under the jurisdiction of ERISA. As a fiduciary, plaintiff is required, pursuant to 29 U.S.C. § 1104, to:

"... discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ...

\*     \*     \*     \*     \*     \*

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter."

It is pursuant to these obligations and the resulting potential liability thereupon that plaintiff commences this action.

Jurisdiction for this action has been properly invoked pursuant to 29 U.S.C. § 1132(f), which states:

"(f) The district courts of the United States shall have jurisdiction, without respect to the

*Senco of Florida, Inc. v. Clark*, 473 F.Supp. 902 (M.D.Fla.1979).[10] In short, an ERISA "employer" can be, and often is, an ERISA "fiduciary."

Appellees do not contend that ERISA should be read in a different sense. Rather, in their brief in support of the decision below, appellees characterize that decision as one based on United States Steel's artless pleading: "The district court properly dismissed the complaint herein for lack of jurisdiction under ERISA because U.S. Steel did not allege and did not show that the complaint was filed by it in its capacity as a fiduciary." (Brief of Appellees at 10–11). It is true that United States Steel's complaint is not a model of clarity. Although, as noted above, the complaint invokes ERISA as a basis for jurisdiction and recites that "[t]he field of employee benefit plans ... has been preempted ... by [*inter alia*] ERISA,"[11] the complaint does not set forth facts from which one could reasonably infer United States Steel's fiduciary status with respect to its employee benefit plans.

However, as also noted above, facts probative of that fiduciary status are set forth in the Valli affidavit filed by United States Steel in support of its opposition to the motion to dismiss.[12] And that affidavit was not controverted by PHRC and its co-defendants in the district court.[13] Thus, when the district court ruled on the motion to dismiss, United States Steel had not only asserted "its status as 'fiduciary' under ERISA,"[14] but had presented uncontradicted factual support for that assertion. On that state of the record, the district court erred in describing United States Steel's claim of fiduciary status as "purely conclusory"[15] —and therefore erred in granting the motion to dismiss.

### III.

Our decision is a narrow one: United States Steel has standing to sue under 29 U.S.C. § 1132(a)(3) as a "fiduciary," notwithstanding that it is also an "employer." Having determined that the district court

---

amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." Moreover, plaintiff General Motors has standing to bring this action under 29 U.S.C. § 1132(a):

"(a) A civil action may be brought—

\* \* \* \* \* \*

(3) by a ... fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan...."

**10.** None of the five cases cited by the district court—*Smith v. Hickey*, 482 F.Supp. 644, 649 (S.D.N.Y.1979); *National Bank of North America v. Local 553 Pension Fund*, 463 F.Supp. 636 (E.D.N.Y.1978); *Francis v. United Technologies Corp.*, 458 F.Supp. 84 (N.D.Cal.1978); *Wong v. Bacon*, 445 F.Supp. 1177 (N.D.Cal.1977); and *Hibernia Bank v. International Brotherhood of Teamsters*, 411 F.Supp. 478 (N.D.Cal.1976)—is authority to the contrary. The language quoted by the district court from Judge Renfrew's opinion in *Wong v. Bacon* (445 F.Supp. at 1183) —"employers who contribute to employee benefit plans do not fit in any of the four limited categories of plaintiffs in Section 502(e)(1) [29 U.S.C. § 1132(e)(1)], the Secretary of Labor, participants, beneficiaries, and fiduciaries"—is inapposite: In *Wong v. Bacon*, employers brought a federal declaratory judgment action against trustees of an employee benefit plan,

seeking a federal court determination that state law, not ERISA, governed the employers' claims of restitution for sums paid in by mistake. Judge Renfrew dismissed the action for lack of jurisdiction, holding that (1) an action to anticipate, and head off, an expected federal defense to a state cause of action does not state a federal claim, and the declaratory judgment statute (28 U.S.C. § 2201) cannot convert such an action into a federal claim, and (2) employers are not, by virtue of their employer status, fiduciaries (or participants or beneficiaries) and hence, *qua* employers, have no standing to sue under ERISA.

**11.** See text, *supra*, at note 5.

**12.** See text, *supra*, at note 7.

**13.** Nor is it controverted here.

**14.** See text, *supra*, at note 8.

**15.** *Id.* Standing alone, the complaint would not have sufficed to establish plaintiff's standing to sue. We are not to be understood as condoning the filing of insufficient complaints. In this instance, however, the insufficiency of the complaint was remedied by plaintiff's later submissions of law and fact.

has jurisdiction pursuant to 29 U.S.C. § 1132, we find it unnecessary to consider whether the district court was right in deciding that it had no "arising under" jurisdiction pursuant to 28 U.S.C. § 1337. *Cf. Wong v. Bacon*, 445 F.Supp. 1177, 1182–83 (N.D.Cal.1977); *General Motors Corp. v. UAW*, 23 FEP Cases 1769 (E.D.Mich. No. 9–72156, Oct. 2, 1980).

### IV.

Appellees contend that, even if the district court has jurisdiction, it should abstain in deference to the already pending PHRC proceedings—proceedings in which, appellees contend, United States Steel's federal claims can be fully protected. But the appropriateness of abstention is not a question to be determined, in the first instance, by this court; the question is one which ought initially to be addressed to the district court, and hence it will be open on remand. Also open on remand is the question whether, assuming *arguendo* the validity of United States Steel's claim of preemption, that claim is nonetheless unavailing with respect to Mrs. Horner's grievance for the reason that her complaint against United States Steel was filed with PHRC on October 11, 1974, more than two months before January 1, 1975, the date on which ERISA's preemption provision took effect. 29 U.S.C. § 1144(b)(1).

The judgment below is reversed and the cause remanded for further proceedings consistent with this opinion.